UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RODNEY LOUIS THORNTON                         CIVIL ACTION

VERSUS                                        NO. 18-1198

ROBERT TANNER ET AL.                          SECTION "H" (2)

## REPORT AND RECOMMENDATION

Plaintiff Rodney Louis Thornton is a prisoner currently incarcerated in Rayburn Correctional Center ("Rayburn") in Angie, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 ("Section 1983") against Robert Tanner, Head Warden; Ernestein Smith, Captain over the Legal Program; and Mike Todd, Colonel over the Legal Program. Thornton alleges that while incarcerated at Rayburn in 2017 and 2018, defendants tampered with the submission of his legal mail to this court related to a separate, prior-filed lawsuit, and with his incoming and outgoing non-legal mail to his family members. Plaintiff seeks injunctive relief and monetary damages. Record Doc. No. 1 (Complaint at ¶ V).

On September 18, 2018, I conducted a telephone conference in this matter. Record Doc. No. 15. Participating were plaintiff, pro se; and Assistant Attorney General Scott Centorino, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

During the Spears hearing, plaintiff testified that he is currently incarcerated at Rayburn based upon his January 25, 2013 convictions for manslaughter and possession of a firearm, for which he is serving a 40-year prison sentence.

Plaintiff testified that he filed the instant lawsuit, in part, because certain paperwork he mailed to this court in a separate, previously filed lawsuit, Thornton v. Crawford et al., C.A. No. 17-9715 ("the Crawford lawsuit"), was tampered with by defendants and was never received by this court.  Plaintiff testified that he filed the Crawford lawsuit on September 26, 2017, while he was in solitary confinement at Rayburn.  According to plaintiff's complaint in the Crawford lawsuit, plaintiff sought monetary and injunctive relief against several Rayburn prison officials based on improper confinement and loss of personal property as a result of his time spent in solitary confinement.  The Crawford lawsuit, Record Doc. No. 1 (Complaint at ¶ IV). Plaintiff stated that he was placed on solitary confinement from July through late November 2017, as punishment for writing a letter that plaintiff alleged was forged in his name by another inmate.  Plaintiff testified that he requested a handwriting comparison from Rayburn officers for the letter written in his name to prove that he did not write it, but that he never received the comparison.

Plaintiff testified that the court sent him legal paperwork to fill out for the Crawford lawsuit, in which he was instructed to state his name, location, the identities

of his witnesses, and the officers involved in the Crawford lawsuit. Plaintiff said that he filled out the paperwork and sent it back to the court. Plaintiff stated that while he was in solitary confinement from July to late November 2017, none of his legal mail pertaining to the Crawford lawsuit was sent to the court. Plaintiff testified that when he left solitary confinement and returned to his cellblock shortly after Thanksgiving Day 2017, his legal mail resumed being received by the court.

In both plaintiff's complaint in the instant lawsuit and his Spears testimony, Thornton stated that on December 5, 2017, he withdrew money from his Rayburn account to send a letter to the court, inquiring whether the court received his legal paperwork for the Crawford lawsuit, specifically, the documents providing plaintiff's name, location, identities of witnesses, and officers involved in the lawsuit. Record Doc. No. 1 (Complaint at ¶ IV). Plaintiff testified that he subsequently received a reply letter from the court, stating that the court never received this legal paperwork.

Plaintiff alleged that defendants' tampering with his legal mail caused him prejudice because the court's failure to receive his legal paperwork in the Crawford lawsuit resulted in his case being dismissed with prejudice.

This court's record of the Crawford lawsuit establishes that the court received numerous pleadings and other documents from plaintiff in that case, including objections and supplemental objections to a motion to dismiss, and two sets of objections to a report and recommendation. Additionally, the record reflects that plaintiff's initial complaint

in the <u>Crawford</u> lawsuit was received and filed by this court on September 26, 2017, <u>during plaintiff's stint in solitary confinement</u>. I informed plaintiff of the court's receipt of these specific legal documents.  I also told plaintiff that the receipt and filing of his <u>Crawford</u> lawsuit complaint occurred during the time period in which plaintiff alleged his mail was not being received by the court.  After informing plaintiff that the court had in fact received plenty of mail from him, and after summarizing the specific documents received by the court, plaintiff responded, "Yes."

Plaintiff also alleged that defendants tampered with his non-legal incoming and outgoing mail to his family members.  He testified that the only family members he has ever contacted from prison are his two sisters: Roxanne Dixon and Lynn Thornton. Plaintiff testified that the last time he spoke to his family members on the phone was January or February 2018, when one of his sisters informed him that she sent a visitation form and other mail addressed to plaintiff to his prison address.  Plaintiff testified that he never received this mail from his sister.  Plaintiff stated that he last received mail from his family three to four months before the <u>Spears</u> hearing, in approximately May 2018. Plaintiff said that he writes and calls his sisters from prison every day, but that they have <u>not</u> been responding in recent months.  Plaintiff testified that the last mail he sent out to family was a week before the <u>Spears</u> hearing, when he sent a letter to his sister, Roxanne Dixon.  In regard to his sisters, plaintiff stated that "it's not like them" to not respond to his mail or answer his phone calls.  I asked plaintiff twice whether he knows for a fact

that his mail to his sisters is not being sent from prison, and plaintiff responded both times that he did not know. Plaintiff testified that all he knows is that his sisters are not responding to his letters or phone calls. When I asked plaintiff to articulate why he believes his family mail has not been handled properly by prison officials, he reiterated several times that his concerns stem merely from his personal belief that it is uncharacteristic of his family members not to respond to his communications.

Plaintiff acknowledged that he is in fact receiving other non-legal, non-family mail at his prison address. Plaintiff stated that he has written letters to various companies to request delivery of catalogues and free books to his prison address. Plaintiff testified that the providers have mailed these items to his Rayburn address, and plaintiff has received possession of the items, all without issue.

## ANALYSIS

### I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998); Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014).

Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite

6

statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder,

7

105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.  Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[1]

## II.    LEGAL MAIL

Thornton complains that defendants tampered with his legal mail by failing to transmit certain legal paperwork in the Crawford lawsuit to the court during his period of solitary confinement.  Thornton alleges that he suffered prejudice when his case was dismissed, which Thornton stated was a direct result of the court's failure to receive his legal mail.  The United States Supreme Court and Fifth Circuit Court of Appeals have held that prison practices or restrictions concerning prisoner mail implicate two distinct but

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

intertwined constitutional rights: (1) the right of access to the courts, which the Supreme

Court has indicated lies in both the Due Process Clause and the First Amendment, Wolff

v. McDonnell, 418 U.S. 539, 575–76 (1974); and (2) the right to freedom of speech

guaranteed by the First Amendment.  Walker v. Navarro Cnty. Jail, 4 F.3d 410, 413 (5th

Cir. 1993); Brewer v. Wilkinson, 3 F.3d 816, 820 (5th Cir. 1993).  Specifically, the right

of access to the courts is implicated only when the mail in question is legal in nature,

while the right to free speech is relevant to claims involving both legal and non-legal

mail.  See generally Brewer, 3 F.3d 816.

 Regardless what rights are implicated, however, it is clear that prisoners'

constitutional rights with respect to mail are not absolute.  A prison practice or regulation

may permissibly interfere with an inmate's mail, including his legal mail, if the practice

is "reasonably related to a legitimate penological interest."  Morgan v. Quarterman, 570

F.3d 663, 666 (5th Cir. 2009) (quotation omitted) (citing Turner v. Safley, 482 U.S. 78,

89 (1987)); see Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989) (reasonableness

standard applies to challenges to regulations as well as to actions of a prison official).

 To the extent that Thornton is complaining that defendants' alleged tampering

with his legal mail interfered with his constitutional right of access to the courts, it is well

established that prisoners have such a constitutional right.  Bounds v. Smith, 430 U.S.

817, 821 (1977).  Under the First Amendment, prisoners have the right to a "reasonably

adequate opportunity to file nonfrivolous legal claims challenging their convictions or

9

conditions of confinement." <u>Lewis v. Casey</u>, 518 U.S. 343, 356 (1996) (emphasis added). Although "the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has <u>not</u> extended this right to encompass more than <u>the ability of an inmate to prepare and transmit a necessary legal document to a court.</u>" <u>Vaccaro v. United States</u>, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); <u>accord</u> <u>Manning v. Sumlin</u>, 540 F. App'x 462, 463 (5th Cir. 2013) (citing <u>Lewis</u>, 518 U.S. at 356; <u>Brewer</u>, 3 F.3d at 821).

An inmate's right of access to the courts may be violated when a prison official tampers or interferes with his legal mail. <u>Brewer</u>, 3 F.3d at 820. However, to state a claim that his constitutional right of access to the courts was violated by defendants, Thornton must demonstrate that <u>his position as a litigant was actually prejudiced.</u> <u>Lewis</u>, 518 U.S. at 348; <u>Every v. Jindal</u>, 413 F. App'x 725, 727 (5th Cir. 2011) (citing <u>Lewis</u>, 518 U.S. at 349-50; <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999)); <u>Cochran v. Baldwin</u>, No. 05-20100, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328 (5th Cir. 1996). Specifically, Thornton must show that defendants' alleged tampering with his legal mail "hindered his efforts to pursue a legal claim." <u>Lewis</u>, 518 U.S. at 351.

In this case, Thornton's written submissions, even as expanded upon by his <u>Spears</u> testimony, fail to state a cognizable Section 1983 claim for violation his right of access to the courts. The record of the <u>Crawford</u> lawsuit reflects that this court received a

plethora of legal documents from Thornton <u>via</u> <u>mail</u> without issue, including his initial

complaint, an ex parte/consent motion for leave to proceed in forma pauperis, a letter to

the court written by Thornton and addressed to the magistrate judge, three sets of

objections to a motion to dismiss, a supplemental opposition to a motion to dismiss, and

an objection to the magistrate judge's report and recommendation to the district judge.

The <u>Crawford</u> lawsuit, Record Doc. Nos. 1, 2, 7, 15, 16, 18, 19, 20.  The court's record

of the <u>Crawford</u> lawsuit further establishes that plaintiff's legal mail was received and

filed by the court during his period of solitary confinement.  Under the Fifth Circuit's

interpretation of Supreme Court precedent, Thornton's right of access to the courts

extends only to his ability as an inmate to prepare and transmit necessary legal

documents to a court.  <u>Brewer</u>, 3 F.3d at 821.  The record of the <u>Crawford</u> lawsuit clearly

illustrates that Thornton consistently and successfully transmitted legal paperwork to this

court throughout the duration of his lawsuit, including during his period of solitary

confinement.  Neither the <u>Crawford</u> lawsuit record, plaintiff's written submissions, nor

his <u>Spears</u> testimony show that his ability to prepare and submit legal mail was impeded

in any way by defendants.

Additionally, Thornton fails to show that defendants' alleged tampering with his

legal mail prejudiced his position as a litigant, as required by <u>Lewis</u> as its progeny. In his

<u>Spears</u> hearing, Thornton testified that the <u>Crawford</u> lawsuit was dismissed with

prejudice because of the court's failure to receive Thornton's paperwork providing his

11

name, location, identities of his witnesses, and the officers involved in the lawsuit. However, the Crawford lawsuit record reveals that this case was not dismissed for failure to receive legal paperwork or to provide this information; rather, dismissal was based on substantive grounds and the court's findings that Thornton's claims were legally frivolous and otherwise failed to state a claim for which relief can be granted.  The Crawford lawsuit, Record Doc. Nos. 17 and 21.  Accordingly, to the extent Thornton claims that defendants' tampering with his legal mail interfered with his access to the courts, his claim is legally frivolous and does not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

As to Thornton's free speech rights, "'[a] prison official's interference with a prisoner's legal mail . . . may violate the prisoner's First Amendment right to free speech–i.e., the right to be free from unjustified governmental interference with communication.'"  Damm v. Cooper, 288 F. App'x 130, 132 (5th Cir. 2008) (quoting Brewer, 3 F.3d at 820).  However, the Fifth Circuit has recognized a legitimate penological need for prison "personnel to open, review, and occasionally censor outgoing mail" because of concerns about possible threats to prison security, including ensuring that the mail does not contain contraband.  Franco v. Collins, No. 2:14-CV-148, 2015 WL 136544, at *1 (S.D. Tex. Jan. 8, 2015) (citing Busby, 359 F.3d at 721); McCartney v. Keith, No. 14-CV-230, 2014 WL 5092017, at *2 (W.D. La. Oct. 9, 2014) (citing Busby, 359 F.3d at 721).  As stated above, the record of the Crawford lawsuit reflects no interference whatsoever

by defendants with the submission of Thornton's legal mail to this court.  Thornton successfully communicated with the court by submitting numerous legal documents <u>via</u> <u>mail</u> from his prison address, which were received by this court without issue. Furthermore, the filing of his <u>Crawford</u> lawsuit complaint, which was received by this court <u>via</u> <u>mail</u> on September 26, 2017, indicates that Thornton's ability to communicate with the court was not affected by his time spent in solitary confinement from July to late November 2017.  Accordingly, to the extent Thornton claims that defendants' tampering with his legal mail interfered with his free speech rights, his claim is legally frivolous and does not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

For the foregoing reasons, plaintiff's legal mail tampering claim is legally frivolous in all respects and does not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

III.    NON-LEGAL MAIL

Thornton also complains that defendants tampered with his non-legal incoming and outgoing mail to his family members.  He testified in his <u>Spears</u> hearing that he has not received mail from his family since May 2018.  First Amendment liberties are implicated in the censorship of non-legal prisoner mail.  <u>Brewer</u>, 3 F.3d at 821–22. When a prison practice involving prisoner mail–including non-legal mail–impinges on

an inmate's constitutional rights, such a practice is valid if it is "reasonably related to

legitimate penological interests" Id. at 825.

However, to state a cognizable claim, a party must assert more than mere

speculative and conclusory allegations. As recently clarified by the Supreme Court,

> "a complaint must contain sufficient factual matter, accepted as true,
> to 'state a claim to relief that is plausible on its face.'" A claim for
> relief is plausible on its face "when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged." A claim for
> relief is implausible on its face when "the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct."

Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 796 (5th Cir. 2011) (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544 (2007)) (emphasis added). "Factual allegations must be enough to raise a right

to relief above the speculative level, on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." Maloney Gaming Mgmt., L.L.C. v. St.

Tammany Parish, 456 F. App'x 336, 340 (5th Cir. 2011) (quotations omitted) (citing

Iqbal, 129 S. Ct. at 1959; Elsensohn v. St. Tammany Parish Sheriff's Ofc., 530 F.3d 368,

371 (5th Cir. 2008); In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 n.10 (5th Cir.

2007)) (emphasis added).

To the extent that Thornton is complaining that defendants' alleged tampering with

his non-legal mail interfered with his free speech rights under the First Amendment,

Thornton's written submissions and Spears testimony fail to state a cognizable Section

1983 claim for violation of his First Amendment rights.  In his Spears testimony,

Thornton made purely speculative and conclusory accusations against defendants in

regard to their alleged interference with his family mail.  When prompted to articulate

why he believed his mail was not being submitted by defendants, plaintiff admitted that

he did not know whether or not the mail was being sent.  The only support Thornton

could provide for his accusations was his personal belief that it is uncharacteristic of his

family not to respond to his communications and his speculation that defendants must be

interfering with his family mail, as opposed to the possibility that his family members

may simply have stopped writing to him or returning his phone calls while he is in jail.

Further undermining the plausibility of his speculation in this regard, Thornton

testified that he is consistently and successfully sending and receiving other non-legal

mail at his prison address.  He stated that he has been able to send mail to companies,

requesting catalogues and books, and these companies have sent these requested items

to Thornton at his prison address, all without issue.  As stated above, plaintiff's outgoing

legal mail in the Crawford lawsuit consistently was received by the court without issue.

Plaintiff's testimony and the record of the Crawford lawsuit indicate that there were no

issues with Thornton's incoming and outgoing channels of mail communication at

Rayburn. Finally, if plaintiff is implying in his written submissions and Spears testimony

that defendants were engaged in a conspiracy to prevent him from communicating with

his family, there is no plausible allegation whatsoever of such activities.

For the foregoing reasons, plaintiff's non-legal mail tampering claim is legally frivolous in all respects and does not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ____24th____ day of October, 2018.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.